Our next case for argument. Mr. Brosh, morning, Your Honors. May it please the Court. The day I received my appointment to represent Mr. Clarke, I read the indictment, I read the statute at question, and I thought, I've got a defensible case here, because no reasonable person is going to send and submit tax returns asking for $300,000 back that wasn't coming to them. The next day I went to see Mr. Clarke where he was being held, and I told him, this is what our defense is going to be. And he said, oh, no, wait. He said, I got three checks from the IRS for $300,000 each. I didn't believe it. The next day we had a detention hearing, and I asked the government, I said, is it true that he got $900,000 from the IRS? Yes, it was true. Now I'm not so sure I have a defensible case. And you're aggrieved that none of it was paid to you. Pardon me? You're aggrieved that none of it was paid to you. Yes. You're here at CJA rates, notwithstanding. I spent a lot of time with Mr. Clarke, and he attributed those tax returns to teachings he had received at the Moore Science Temple of America. And I still wondered about his competence. We had him assessed. The report said that he was basically a sovereign nation person. That's true. But I see a difference. Most of the sovereign nation cases, they say the United States has no jurisdiction over me, the government cannot exist. Clarke was different. He said, when I was born, the government started putting money in an account for me. And it grew over time, and it was time for me to take out my million dollars or so. We never discussed a plea with the government, and none was ever offered, because everybody believed it would be fruitless to try and lay a factual basis for any type of a plea. At the same time, I was clear with the government what our defense was going to be. It was going to be that he believed the money was his. Subsequently, the government filed a motion in limine, precluding us from using that defense. Judge Lozano granted the motion in limine. We began the trial. I mentioned the Moorish Science Temple and his good-faith belief that the money belonged to him. I was stopped by the judge. I was told, you can't raise that argument. What his beliefs are are immaterial and irrelevant. So I said, finally, we'll just make our offer of proof when the government's done, and then rest. Which is pretty much what we did, except the government, after they rested, they withdrew their motion in limine. Now at this time, Mr. Clark and I did not know quite sure what we should do, because obviously we hadn't prepared him to testify because we knew he would not be able to testify. But nevertheless, I made my Rule 29 motion saying that the government did not prove that he knew the tax returns were false. That was denied. At the end, I submitted my jury instruction on good-faith belief. That instruction was rejected. Those are my bases for the appeal in this matter. I think, I don't think, I believe the case should be remanded for a new trial. Thank you. Thank you, Mr. Bosch. Mr. Padilla. Good morning. May it please the Court, Nicholas Padilla on behalf of the United States. Feeling the evidence in the light most favorable to the government, there was ample evidence to support the jury's conclusion that Clark knew the claims he submitted to the Internal Revenue Service were false. Just looking at the seven tax returns on the face supports that because those tax returns were clearly and absolutely groundless. When you look at the tax returns income portion, it indicated an off seven tax returns of an income of $900,000. However, Clark failed to provide any corresponding entries showing how this $900,000 income was obtained. Additionally, there was no evidence that the trust earned any income. In August of 2009, that was when Clark contacted the Internal Revenue Service and obtained identification number, tax number for that trust. That was the same time he initially submitted the first three tax returns. Additionally, when you look at the fiduciary fees, it was $900,000. There was no evidence supporting such fees or any offering of any evidence, logical explanation for why a fiduciary would take such a large fee, a fee that's equal to the income. Additionally, when he first submitted the tax returns, the three tax returns in August of 2009, he identified he had a form 56 attached to it where he identified the fiduciary relationship. On that form, he identified Timothy Geithner as a fiduciary of the trust. Now, the address listed on that was 1600 Pennsylvania, Washington, D.C., which is the White House. In that time, Timothy Geithner, with an N, was the U.S. Secretary of the Treasury at that time. So it's reasonable for a jury to infer that Clark knew those claims were false, knowing that Timothy Geithner, the U.S. Secretary of the Treasury, was not, in fact, the fiduciary of the trust or had been paid $900,000 in fiduciary fees. When you look at the withholdings, we had $300,000 in withholding. However, Clark's personal income tax returns for 2006 through 2008 reported no income from the trust or any payments made on behalf of the trust to him. In 2006 and 2007, Clark was employed as a U.S. poster employee where he earned $56,000 and $64,000. And in 2008, he had zero income. In 2009, he failed to file a tax return. Lastly, there was no evidence of any third party submitting evidence of any withholding of $300,000 for that trust or any payment of any taxable funds to any other persons. So when you look at that, the tax returns by themselves are sufficient. But however, you have to look at Clark's actions. When he initially, the first three tax returns were submitted, they were found to be frivolous in December. The Internal Revenue Service notified him. Clark again submitted the returns again with the same numbers. However, this time, he took out the fiduciary relationship where he identified Timothy Geithner as the fiduciary of the trust. Based on that, a jury could reasonably infer that Clark thought the form falsely identifying Timothy Geithner as the fiduciary was the reason why IRS did not process his claims. So he deliberately omitted those the second time when he submitted the returns again in 2009. Additionally, you have to consider Clark's actions at the check cashing store. He didn't go to a bank initially. He decided to go to a check cashing store. Now, all three refund checks were sent to Clark at the same time. They were processed all at the same time. However, Clark only attempted to cash one of those checks. This was at a check cashing store where he was willing to pay $15,000 to $30,000 a fee to get that cash checked, to get that check cashed. Again, a jury could infer that because he was not entitled, he knew he was not entitled to that cash, he decided to only cash one check in addition to pay a fee, thinking that it may help out process the check a little bit easier, and keep the two checks for himself just to see what would happen with this first check. In addition to that, his communications with the employees at the check cashing business, when questioned by an employee as far as the legitimacy of that check, Clark indicated to the employee that he obtained the check from a trust based on his deceased father. However, there's no evidence on the tax returns of that trust being related to his father or any other relative. Lastly, I think the most important aspect of it is Clark's liquidation of the $900,000 that he obtained, supports that he knew the claims were false. He got rid of the money very quickly. Within three months, January, February, March of 2010, he spent approximately $800,000, and the last $100,000 he spent in April, May, and June. In that time, he purchased two houses, four cars, and approximately $140,000 in gold and silver coins. Moving on to the second issue concerning the court refusing to give a good faith instruction, district court did not clearly, did not err in refusing to give that instruction. Clark's request for that instruction is an incorrect statement of law. For a 18 U.S.C. Section 287 violation, it's a false claim statute, and all that the government has required is that the individual submitting the form knew such claim was to be false. The statute does not mention anything concerning willfulness requirement. In addition to that, this court has long recognized that willfulness need not be proved in cases that provided U.S. v. Catan and U.S. v. Ferguson. And lastly, the Seventh Circuit pattern jury instruction supports the court's decision where it indicates in the commentary good faith instruction is not warranted when the government need only prove a mens rea of knowledge. When you look at those factors, district court did not err in refusing to give that good faith instruction. If this court seems that there was an abuse of discretion by the district court, government is asking that you find that it would be harmless. There was no evidence presented by defense count, by Clark that he believed he was acting in good faith. I thought, I thought he was precluded from using that. Pardon me? I thought he was precluded by the court from using that defense. No, it came, it came to a time where the government withdrew that motion to eliminate after he rested. We had a, we withdrew that and we indicated that he could get into his knowledge as far as the social security trust. No, at the time he, at the time the defense started, they were perfectly entitled to put him on the stand and say that he had believed fundamentally that he was doing the right thing. At that time, he had not testified. It was the defense. Did any evidence at all go in? No, no evidence of that went in. No evidence of that. Did he have an opportunity to do it? Yes, he did have an opportunity to do it. Was that called to his attention by the court? That was. There was a, there was a conference with the court. The court asked him, I believe as far as after discussions with the defense attorney and the defendant and the defense counsel indicated his client did not want to testify concerning that defense. I'm not talking about that. Was any attempt made to introduce, for instance, the underlying, that he was attached to some group, if I recall? No, there was no evidence of that. The only evidence. Was there an opportunity to put it in? The only evidence that. That was the only question to ask, would your client take the stand? No, the only evidence that. No, no, you're not listening to me. Was there any invitation to him to introduce anything other than his client's testimony? No. There was a tax return that had identified DeMoore's Science Temple. The first three tax returns had identified Moore's Science Temple as his address on that. He subsequently changed it on the later returns, but that was the only evidence. Is there such a place? Is there? Yes, there is a place. It's in Illinois. Did you explore that, or did the government explore that? No, no. As far as if the court does determine that the district court did commit error in refusing this jury instruction, the government just asks that you find that it's harmless and affirm his conviction. Any other questions? The government will rest on its brief. Thank you. Thank you, Counsel. Anything further, Mr. Bosch? Nothing further, Your Honor. Thank you. All right. Well, Mr. Bosch, we appreciate your willingness to take the appointment in this case and your assistance to everyone involved. The case is taken under advisement. Our final...